UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENNY FORD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>G. WILDEY, et al.,<br><br>　　　　Defendants. | Case No.: 1:10-cv-01024-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>[ECF Nos. 63, 95, 102, 103] |

Plaintiff Benny Ford is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

## I.

## BACKGROUND

This action is proceeding against Defendant Wiley for excessive force and against Defendant Marshall for failure to intervene in violation of the Eighth Amendment.

On September 15, 2014, Defendants filed a motion for summary judgment. (ECF No. 63.) On October 6, 2014, Plaintiff filed several documents in response, including (1) a response to Defendants' statement of undisputed facts; (2) opposition to Defendants' motion for summary judgment; (3) declaration of Plaintiff in support of Plaintiff's briefing in opposition to Defendants' motion for summary judgment; (4) disputed facts in support of Plaintiff's opposition to Defendants' motion for summary judgment; memorandum of points and authorities in support of Plaintiff's opposition to

1  Defendants' motion for summary judgment; and statement of undisputed material facts. (ECF Nos.
2  76-82.)
3  On October 14, 2014, Defendants filed a reply to Plaintiff's opposition to their motion for
4  summary judgment, objections to Plaintiff's statement of disputed facts, and objections and motion to
5  strike portions of Plaintiff's declaration and exhibits. (ECF Nos. 84-87.)
6  On November 3, 2014, Plaintiff filed five separate surreplies. (ECF Nos. 95-99.) Plaintiff also
7  filed a declaration in support of his filings. (ECF No. 100.)
8  On November 10, 2014, Defendants filed a motion to strike Plaintiff's unauthorized pleadings
9  (ECF Nos. 78 and 82).
10  On November 10, 2014, Plaintiff filed a motion for an independent expert medical specialist
11  and a motion to strike declaration of Doctor G. Church. (ECF Nos. 102 and 103.)

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).  The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### III.

### DISCUSSION

#### A.   Motion to Strike Plaintiff's Filings in Opposition

Defendants move to strike Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment (ECF No. 78), and Plaintiff's Separate Statement of Undisputed Material Facts (ECF No. 82) and to deem these pleadings nullities.  (ECF No. 88.)  Defendants argue that Plaintiff's "Brief in Opposition to Defendants' Motion for Summary Judgment" coupled with a separate statement of undisputed facts appears to be an attempt to file a cross-motion for summary judgment which was not filed in accordance with Local Rule 260(a).  (Id.)

Plaintiff filed a response to Defendants' motion and submits that he was not and is not intending to file a cross-motion for summary judgment.  (ECF No. 98.)  Nonetheless, Defendants continue to argue that because the nature of Plaintiff's filings is unclear, they should be stricken and deemed nullities.  (ECF No. 101.)

1  Defendants' request to strike Plaintiff's filings shall be denied.  Taking into consideration
2  Plaintiff's pro se status, the Court does not find a basis to strike Plaintiff's filings in opposition as
3  nullities, as Plaintiff merely submitted a brief in opposition and separate statement of undisputed facts.
4  Plaintiff's filings are in substantial compliance with Local Rule 260, and Plaintiff's filings cannot be
5  said to be "redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Thus, the
6  Court declines to strike Plaintiff's opposition filings (ECF Nos. 78 & 82).

### B. Motion to Strike Declaration by Doctor Church

Plaintiff moves to strike the declaration of expert witness, Doctor Church filed in support of Defendants' motion for summary judgment.

The Federal Rules of Evidence authorize the opinion testimony of an expert witness who has the requisite "knowledge, skill, experience, training or education" to form a specialized opinion.  Fed. R. Evid. 702.  "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."  Fed. R. Evid. 703.

Plaintiff's objections to the declaration of Doctor Church must be overruled in light of the Federal Rules of Evidence.  Doctor Church's opinion is properly based on his review of Plaintiff's medical records, without conducting an interview or examination of Plaintiff.  Although Doctor Church's opinion, as Defendants' expert witness, is by its very nature biased in favor of Defendants, such fact does not preclude submission of such evidence.  The weight to be accorded the opinion of Doctor Church is a determination left to the trier of fact.   Accordingly, Plaintiff's motion to strike the declaration of Doctor Church must be denied.

### C. Plaintiff's Motion for Appointment of Expert

Plaintiff requests the appointment of an expert witness pursuant to Federal Rules of Evidence 706 to examine his wrist and provide a professional opinion.

The Court has discretion to appoint an expert pursuant to Rule 706(a) of the Federal Rule of Evidence.  In relevant part, Rule 706 states that "[o]n a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed …"  Fed. R. Evid.

4

1 706(a); Walker v. American Home Shield Long Term Disability Plan, 180 F.3d 1065, 1071 (9th Cir.
2 1999). Pursuant to Rule 702, "a witness who is qualified as an expert by knowledge, skill, experience,
3 training or education may testify in the form of an opinion or otherwise if: (1) the expert's scientific,
4 technical, or other specialized knowledge will help the trier of fact to understand the evidence or to
5 determine a fact in issue …" Fed. R. Evid. 702. While the court has the discretion to appoint an
6 expert and to apportion costs, including the appointment of costs to one side, Fed. R. Evid. 706; Ford
7 ex rel. Ford v. Long Beach Unified School Dist., 291 F.3d 1086, 1090 (9th Cir. 2002); Walker, 180
8 F.3d at 1071, where the cost would likely be apportioned to the government, the court should exercise
9 caution. Moreover, Rule 706 is not a means to avoid the in forma pauperis statute and its prohibition
10 against using public funds to pay for the expenses of witnesses, Manriquez v. Huchins, No. 1:09-cv-
11 00456-LJO-BAM PC, 2012 WL 5880431, at *12 (E.D. Cal. 2012), nor does Rule 706 contemplate
12 court appointment and compensation of an expert witness as an advocate for Plaintiff, Faletogo v.
13 Moya, No. 12cv631 GPC (WMC) , 2013 WL 524037, *2 (S.D. Cal. 2013).

14 Plaintiff seeks the assistance of an expert witness for his personal benefit and to assist the
15 Court in ruling on the Defendants' motion for summary judgment. While the Court is cognizant of the
16 challenges an in forma pauperis litigant such as Plaintiff faces in retaining an expert witness, the in
17 forma pauperis statute does not grant the Court the authority to appoint expert witnesses on behalf of
18 a party. 28 U.S.C § 1915; see also Pedraza v. Jones, 71 F.3d 194, 196 (5th Cir. 1995). The Court does
19 not require an expert witness to determine whether Defendants' used excessive force in violation of
20 the Eighth Amendment, and this case is not a case in which the ordinary adversary process does not
21 suffice. See, e.g., In re Joint E. & S. Dists. Asbestos Litig., 830 F.Supp. 686, 693 (E.D.N.Y. 1993)
22 (allowing appointment of independent expert in mass tort case). Accordingly, Plaintiff's motion for
23 appointment of an independent expert witness should be denied.

24    **D.**  **Defendants' Motion to Strike Portions of Plaintiff's Evidence**

25 Defendants move to strike portions of Plaintiff's verified complaint and declaration in which
26 he attempts to authenticate certain exhibits. The Court declines to strike portions of Plaintiff's
27 complaint based on Defendants' relevancy, speculative, lack of foundation, and lack of personal
28 knowledge objections. Irrelevant information cannot create a triable issue of material fact, and the

Court finds it unnecessary to undertake striking portions of Plaintiff's complaint merely because it arguably lacks relevancy, is speculative, lacks foundation and personal knowledge.  Furthermore, the Court overrules Defendants' objection to Plaintiff's Exhibits E (Health Care Request Form) and J (Inmate Grievance 602 Form), attached to his declaration on hearsay and relevancy grounds.

Furthermore, Defendants' objections to Plaintiff's prison records for lack of authentication are overruled.  Fed. R. Evid. 901(b)(4); Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 532-33 (9th Cir. 2011).  While the records are subject to authentication under Rule 901(b)(6), the Court notes the absence of any evidence or argument suggesting the existence of a legitimate challenge to the records on authentication grounds.  See Chamberlain v. Les Schwab Tire Center of California, Inc., No. 2:11-cv-03105-JAM-DAD, 2012 WL 6020103, at *2 (E.D. Cal. Dec. 3, 2012) (citing Burch v. Regents of Univ. of California, 433 F.Supp.2d 1110, 1120 (E.D. Cal. 2006)) (rejecting "purely procedural" authentication objection).

### E.  Allegations of Complaint

On July 16, 2009, Defendant Wildey escorted Plaintiff from the shower back to his cell.  When Defendant Wildey went to the shower door, Plaintiff placed his hands out of the tray slot to allow Defendant Wildey to handcuff him.  Defendant Wildey placed the handcuffs on Plaintiff's wrists.  Defendant Wildey squeezed both metal handcuffs around Plaintiff's wrists very tightly.  Plaintiff felt a surge of severe pain in his wrists and hands.  Plaintiff told Defendant Wildey that the handcuffs were too tight and that he was in pain.  As Defendant Wildey escorted Plaintiff to his cell, he started bragging that he could squeeze the handcuffs even tighter.  Plaintiff pleaded with Defendant Wildey to stop because he was already in severe pain.

Once Plaintiff was inside his cell, Defendant Wildey started bragging to Defendant Marshall that he could squeeze the handcuffs a lot tighter.  Defendant Wildey and Defendant Marshall were grinning at each other during this exchange.  Plaintiff remained in the tight handcuffs for another sixty to ninety seconds until Defendant Wildey removed them.

///

///

///

**F.     Undisputed Facts[1]**

1. On July 16, 2009, both Defendants Wildey and Marshall were assigned to work as floor officers in the Security Housing Unit (SHU) at California Correctional Institution (CCI). That morning, both officers were responsible for escorting inmates from their cells in the SHU to the shower.

2. Defendant Wildey recalls escorting Plaintiff from his cell in the SHU to the shower in the morning of July 16, 2009, but he does not recall what cell number Plaintiff was housed in.

3. Plaintiff was escorted to the shower in handcuffs and Plaintiff did not complain that the handcuffs were too tight, nor does Plaintiff recall any problem with his walk to the shower.

4. The walk from Plaintiff's cell to the shower took between 30 second and one minute, although Plaintiff recalls that the walk took only 20 seconds.

5. Upon completing his shower, Defendant Wildey removed Plaintiff from the shower by having him back up to the slot opening in the shower door, while the door to the shower was still closed.[2]

6. Plaintiff complained that the handcuffs were too tight.[3]

7. Defendant Wildey opened the shower door and escorted Plaintiff back to his cell.[4]

8. The walk from the shower to Plaintiff's cell took between 30 seconds to one minute, although Plaintiff testified that the walk took 45 seconds.[5]

---

[1] These facts are compiled from the parties' submissions where not in dispute.

[2] The Court overrules Plaintiff's objection to the extent he argues that defense counsel has intentionally misled the court by twisting his deposition testimony relating to the subsequent placement of handcuffs on Plaintiff by Defendant Wildey. There is no basis to support Plaintiff's objection. Because the parties dispute the placement of the handcuffs on Plaintiff by Defendant Wildey following the completion of Plaintiff's shower, these facts were omitted as undisputed.

[3] Plaintiff's objection that defense counsel misstated the urgency for which he begged Defendant Wildey to loosen the cuffs is noted, but such factual assertion does not place this statement of fact in dispute.

[4] Plaintiff attempts to dispute this fact by claiming defense counsel has intentionally mislead the Court. The fact that Plaintiff contends additional events took place during this escort does place this basic statement of fact in dispute.

[5] Although Plaintiff attempts to dispute this fact by stating that defense counsel is misstating his testimony, Plaintiff provides no basis to dispute this fact as stated by Defendant, and Plaintiff's attempt to add more facts to this statement is improper.

9. Once they reached Plaintiff's cell, Wildey placed Plaintiff in the cell, closed the cell door, opened the food port, which is a slot in the cell door, instructed Plaintiff to back up to the food port, and then Wildey removed the handcuffs through the food port opening.[6]

10. Wildey closed the food port and secured the cell.

11. Plaintiff has "buckshots" in his hand from a shotgun, after getting shot somewhere between 1979 to 1983, however, these "buckshots" caused Plaintiff no pain or discomfort. Plaintiff does have a metallic pellet in the soft tissue of his writs adjacent to the proximal second metacarpal.

12. Handcuffs that have been placed on too tightly for an extended period of time and where the inmate is struggling against the cuffs can cause compression to the superficial radial nerve branch, which is a nerve that runs from the base of the thumb to the wrist.

13. Plaintiff did not suffer any nerve compression to the superficial radial nerve branch. In addition, Plaintiff did not sustain any permanent injury.

### G. Excessive Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-38 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

---

[6] As with the prior statement, Plaintiff attempts to dispute this fact by stating that defense counsel is misstating his testimony and omitted the factual context in which the incident occurred; however, Plaintiff is attempting to add more facts to this statement which is improper.

8

1    Factors that can be considered are "the need for the application of force, the relationship
2  between the need and the amount of force that was used, [and] the extent of injury inflicted." Whitley
3  v. Albers, 475 U.S. 312, 321 (1986). Although the extent of the injury is relevant, the inmate does not
4  need to sustain serious injury. Hudson, 503 U.S. at 7; Wilkins, 559 U.S. at 37-38. The Eighth
5  Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional
6  recognition de minimis uses of physical force. Hudson, 503 U.S. at 9-10.

   A prisoner's rights can be violated by a prison official's deliberate indifference by failing to
8  intervene. Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995). Prison officials are required "to
9  take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250
10 (9th Cir. 1982) (abrogated on other grounds by Sandin v. O'Connor, 515 U.S. 472 (1995)). To state a
11 claim the plaintiff must show that the defendants acted with deliberate indifference. Thomas v.
12 Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citations omitted). Deliberate indifference requires a
13 showing that "prison officials were aware of a "substantial risk of serious harm" to an inmates health
14 or safety and that there was no "reasonable justification for the deprivation, in spite of that risk." Id.
15 (quoting Farmer v. Brennan , 511 U.S. 825, 837, 844 (1994)). Additionally, an officer can only be
16 held liable for failing to intercede if he had a realistic opportunity to intercede and failed to do so.
17 Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000).

### H. Parties' Arguments

#### 1. Defendants' Argument

Defendants argue that placing Plaintiff in handcuffs for forty-five seconds was not excessive force, and Plaintiff sustained no injury. In addition, Defendant Marshall had no knowledge of any harm occurring to Plaintiff, nor did he observe any inappropriate conduct by Defendant Wildey towards Plaintiff, and Marshall could not have failed to protect Plaintiff from harm. Lastly, Defendants argue they are entitled to qualified immunity because there were no constitutional violations.

///
///
///

2. <u>Plaintiff's Argument</u>

Plaintiff contends on the morning of July 16, 2009, he was physically assaulted and verbally threatened by Defendant G. Wildey, and Defendant R. Marshall failed to stop the assault when he failed to intervene.

On July 16, 2009, while housed in the segregated housing unit at California Correctional Institution (CCI), Defendant Wildey went to escort Plaintiff back to his cell. At the time of the incident, Plaintiff was in the shower. Plaintiff backed up to the shower door and placed his hands out through the tray slot to allow Wildey to handcuff him. Wildey placed the handcuffs on Plaintiff's wrists and squeezed both metal handcuffs around his wrists very tight. Plaintiff felt a surge of severe pain in his wrists and hands. Plaintiff informed Wildey that the handcuffs were to tight and he was in pain. However, Wildey completely ignored Plaintiff, and then opened the door to the shower. As Wildey was escorting Plaintiff back to his cell, Wildey began bragging that he could squeeze the handcuffs even tighter. Wildey then began to reach for Plaintiff's wrists are to squeeze the handcuffs even tighter. Plaintiff pleaded with Wildey to stop because he was already in severe pain. Once Plaintiff was inside his cell, Wildey bragged to Defendant R. Marshall that he could squeeze the handcuffs a lot tighter. Wildey and Marshall were standing outside Plaintiff's cell door grinning at each other. Plaintiff again advised Wildey that he was in pain and to please remove the handcuffs. Wildey looked at Marshall and they both grinned at each other. After approximately another sixty to ninety seconds passed, Wildey finally removed the handcuffs.

Defendant R. Marshall was standing in front of cell number 102 during the entire incident involving Defendant Wildey. Marshall had several opportunities to physically and verbally intervene and stop Wildey's actions.

Following the incident, Plaintiff was in constant pain in both wrists. Plaintiff requested medical attention that day, but had to wait until July 21, 2009, to receive medical attention.

3. <u>Findings</u>

**a. Excessive Force**

The reasonableness inquiry in excessive force cases is an objective one: whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without

10

regard to his underlying intent or motivation and without the "20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). "[T]he reasonableness of force used is ordinarily a question of fact for the jury." Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997). "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Avina v. United States, 681 F.3d 1127, 1130 (9th Cir. 2012) (internal quotations and citations omitted).

It is undisputed that on July 16, 2009, Defendant Wildey placed handcuffs on Plaintiff, and Plaintiff complained that they were too tight. Defendants argue that Plaintiff was placed in handcuffs for a total of forty-five seconds; however, at his deposition, Plaintiff testified that the walk from the shower to the holding cell took approximately forty-five seconds, and then Plaintiff was placed in the holding cell while handcuffed for another fifteen to twenty seconds, totaling one minute and five seconds. (ECF No. 105, Pl.'s Dep. at 29-34.)

Although Defendant Wildey contends that pursuant to prison policy he checked the handcuffs by inserting his index finger to ensure the cuffs were not too tight, Plaintiff disputes such fact under penalty of perjury and Plaintiff has personal knowledge as to whether he believes Defendant Wildey engaged in such procedure.[7] By way of verified pleading, Plaintiff alleges (and Defendant Wildey denies) that Defendant Wildey "bragged" that he could further tighten the handcuffs and attempted to do so. In support of his claim, Plaintiff submits the declarations of fellow inmates Kemon Bead and Michael Watkins who both declare that they heard Defendant Wildey say he could tighten the handcuffs further, and inmate Watkins declares Wildey was smiling as he said so. (ECF No. 82, Exs. F & G.) Plaintiff further alleges (and Defendant Marshall denies), by way of verified pleadings, Defendant Marshall was present during the interaction and walk back from the shower and observed the incident and failed to intervene. Once Plaintiff was inside the cell, Defendant Wildey bragged to Defendant Marshall that he could squeeze the handcuffs a lot tighter, and both Defendants stood

---

[7] Contentions set forth in verified pro se pleadings, motions, and/or oppositions constitute evidence where the contentions are based on personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).

outside the cell door grinning at each other while Wildey verbally harassed and threatened Plaintiff. Plaintiff again informed Defendant Wildey that he was in pain because the handcuffs were too tight, and both Defendants grinned in response.

On July 17, 2009, Plaintiff filed a health care services request form indicating that officer Wildey smashed the handcuffs on Plaintiff's wrist "real" tight and he was in pain and his right hand was "loose" in the bone area. (ECF No. 68, Ex. A.) Upon examination, Plaintiff was able to move his wrist freely, and denied numbness, tingling or sensation. (Id.) An x-ray was ordered and Plaintiff was referred to a medical doctor. (Id.) An x-ray was conducted on July 21, 2009, and normal bony architecture and articulations were shown, and joint spaces were well maintained. (Id.) On September 7, 2009, Plaintiff submitted a request for a refill of his pain medication, which was granted in part. (ECF No. 82, Ex. E.) On August 2, 2010, Plaintiff filed an inmate grievance requesting to receive evaluation by a wrist specialist. (ECF No. 82, Ex. J.) In response to the grievance, it was noted that Plaintiff was scheduled to be seen by his primary care physician on August 19, 2010, but he transferred prior to the appointment. (Id.) While Plaintiff may not have suffered significant injury as a result of the tight handcuffing, such factor, alone, does not defeat the disputed issue of whether Defendants engaged in the malicious and sadistic use of force.[8]

Defendants rely heavily on this Court's decision in Reviere v. Phillips, No 1:11-cv-00483-DLB (PC), 2014 WL 711002 at *3-4 (E.D. Cal. Feb. 21, 2014), to support their argument that the Defendants use of handcuffs did not rise to the level of excessive force based upon the placement of handcuffs too tightly. In this instance, even if the Reviere decision was binding authority, the Court finds it factual distinguishable from the present case. In Reviere, the Court held that the Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition de minimus uses of physical force, proved the use force is not of a sort

---

[8] Although Plaintiff is not qualified to render an expert medical opinion and he did not offer any expert evidence on his injuries, lay witnesses are qualified to testify regarding matters rationally based on their perception. Fed. R. Evid. 701, 702. This reasonably includes observations regarding pain or other symptoms felt. Fed. R. Evid. 701. In addition, the Court is mindful that "[a]t summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1019 (9th Cir. 2011) (citing Block v. City of Los Angeles, 253 F.3d 410, 418-419 (9th Cir. 2001) (internal quotations omitted). The focus is on the admissibility of the evidence's contents, not its form. Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840, 846 (9th Cir. 2004); Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003); Cheeks v. General Dynamics, 22 F.Supp.3d 1015, 1027 (D. Ariz. 2014).

"repugnant to the conscience of mankind."  The Court based its finding on the facts that Plaintiff did not notify the defendants that the handcuffs were too tight when they were first placed on his wrists, and once he notified Defendants he waited only a few minutes before Defendants attempted to remove the handcuffs to which Plaintiff refused until after about fifteen minutes of "yelling and hollering." "Plaintiff never consulted a doctor or obtained any examination, diagnosis, or treatment relating to the use of the handcuffs, and Plaintiff had no information about whether he would have had more than transitory discomfort if he had allowed Defendants to remove the handcuffs when they tried a few minutes after reaching the program office."  Reviere, at *7-8.  In contrast here, Plaintiff complained of the tightness and pain of the handcuffs immediately following the placement by Defendant Wildey, repeatedly complained of pain on the walk back from the shower to his cell, continued to complain of pain upon placement back into his cell, and sought medical attention immediately following the incident and subsequently thereafter.  Thus, the circumstances present in Reviere are distinguishable from those present in the instant case.

Based on the foregoing, given the disputes of fact, summary judgment as to Plaintiff's excessive force claims against Defendants Wildey and Marshall should be denied.

**b.     Qualified Immunity**

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted).  Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether

13

the right was clearly established.  Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances.  Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

In this instance, the evidence viewed in the light most favorable to Plaintiff demonstrates a constitutional violation and there exist triable issues of fact as to whether that right was violated. Therefore, the Court proceeds without further discussion to the second step of the inquiry.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right."  Hope v. Pelzer, 536 U.S. 730, 739 (2002).  While the reasonableness inquiry may not be undertaken as a broad, general proposition, neither is official action entitled to protection "unless the very action in question has previously been held unlawful."  Hope, 536 U. S. at 739.  "Specificity only requires that the unlawfulness be apparent under preexisting law," Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates established law even in novel factual circumstances."  Hope, 536 U.S. at 741.

Defendants have presented no evidence that handcuffing Plaintiff so tightly that he suffered excruciating pain and refusal to loosen the handcuffs after Plaintiff complained of pain was justified. Under these circumstances, no reasonable officer could believe that the abusive application of handcuffs was constitutional.  See, e.g., Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993) (affirming the denial of qualified immunity on an excessive force claim where defendants unnecessarily fastened handcuffs so tightly around plaintiff's wrists that they caused him pain and left bruises and refused to loosen the handcuffs after plaintiff's complaint of pain); Alexander v. Perez, 124 F. App'x. 525, 526 (9th Cir. 2005) ("Since 1992 the legal standard articulated in Hudson has provided officers with ample notice that malicious or sadistic use of force is unlawful.").  Accordingly, Defendants are not entitled to qualified immunity.

///

///

## IV.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion to strike Plaintiff's filings in opposition should be denied (ECF No. 88);

2. Plaintiff's motion to strike the Declaration of Doctor Church should be denied (ECF N. 103);

3. Plaintiff's motion for the appointment of an expert should be denied (ECF No. 102);

4. Defendants' motion to strike portions of Plaintiff's evidence should be denied (ECF No. 87);

5. Defendants' motion for summary judgment should be denied.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 13, 2015**

UNITED STATES MAGISTRATE JUDGE