1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| BENNY FORD, | ) | Case No.: 1:10-cv-01024-SAB (PC) |
| | ) | |
| Plaintiff, | ) | PRETRIAL ORDER |
| | ) | |
| v. | ) | ***Motion <u>In</u> <u>Limine</u> Deadlines:*** |
| | ) | Filing:     December 18, 2015 |
| G. WILDEY, et al., | ) | Response:   January 15, 2016 |
| | ) | Hearing:    January 26, 2016, at 10:30 a.m. in |
| Defendants. | ) | Courtroom 9 (SAB) |
| | ) | |
| | ) | ***Trial Date:*** |
| | ) | February 9, 2016 at 8:30 a.m. in |
| | ) | Courtroom 9 (SAB) (1-2 Day(s)) |

        This Court conducted a telephonic pretrial conference hearing on December 18, 2015.  Plaintiff Benny Ford appeared pro per and Defendants appeared by counsel Deputy Attorney General, Bob Duncan.  Pursuant to Federal Rule of Civil Procedure 16(e) and Local Rule 283, the Court issues this final pretrial order.

**I.      JURISDICTION AND VENUE**

        This Court has jurisdiction and venue is proper.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331.  Venue is proper because the conduct alleged occurred in this judicial district. 28 U.S.C. § 1391.

///

///

///

1

## II.     TRIAL

Trial will begin on Tuesday, February 9, 2016 at 8:30 a.m. before United States Magistrate Judge Stanley A. Boone in Courtroom 9 (SAB).  The trial will be trial by jury.  The estimated trial will take 1-2 days.

## III.     FACTS AND EVIDENTIARY ISSUES

### A.     Undisputed Facts

The following facts are undisputed:

1.     On July 16, 2009, both Defendants Wildey and Marshall were assigned to work as floor officers in the Security Housing Unit (SHU) at California Correctional Institute (CCI).

2.     Defendant Wildey escorted Plaintiff from his cell in the SHU to the shower on the morning of July 16, 2009.

3.     Defendant Wiley escorted Plaintiff from his cell to the shower in handcuffs and Plaintiff did not complain about the manner in which Defendant Wildey escorted him to the shower.  Plaintiff admits that Defendant Wildey did not inappropriately tighten Plaintiff's handcuffs during the escort to the shower.

4.     Defendant Wildey's escort of Plaintiff from his cell to the shower took between thirty seconds to one minute.

5.     After Plaintiff completed his shower, Defendant Wiley had Plaintiff back up to the slot opening in the shower door and placed handcuffs on Plaintiff through the slot in the shower door.

6.     Plaintiff complained once to Defendant Wildey that the handcuffs were too tight.

7.     Defendant Wildey escorted Plaintiff back to his cell, a distance of approximately fifteen to twenty feet.

8.     Defendant Wildey placed Plaintiff in his cell, opened the food port which is a slot in the cell door, and removed Plaintiff's handcuffs.

9.     Defendant Wildey closed the food port and secured Plaintiff's cell.

///
///

2

**B.      Disputed Facts**

Plaintiff submits the following facts as disputed:

1.      Whether on July 16, 2009, Defendant Wildey intentionally squeezed a pair of iron handcuffs around the wrists of Plaintiff.

2.      Whether on July 16, 2009, Plaintiff begged Defendant Wildey to stop squeezing the handcuffs around his wrists.

3.      Whether on July 16, 2009, Defendant Wildey told or bragged to Plaintiff that he could squeeze the handcuffs a lot tighter and was reaching for Plaintiff's wrists area to squeeze the handcuffs tighter.

4.      Whether on July 16, 2009, Defendant Wildey bragged to Defendant R. Marshall that he could squeeze the handcuffs a lot tighter, and Marshal and Wildey started grinning at each other.

5.      Whether on July 16, 2009, Defendant Wildey received pleasure from injuring Plaintiff.

6.      Whether on July 16, 2009, Defendant Wiley ever checked the Plaintiff's handcuffs to see if they were too tight or to see if Plaintiff was injured.

7.      Whether on July 16, 2009, Defendant Wildey intentionally squeezed a pair of iron handcuffs on Plaintiff's wrists to intentionally cause injury and pain.

8.      Whether on July 16, 2009, Plaintiff received more than de minimus injury from Defendant Wildey's excessive force and Defendant R. Marshall's failure to intervene.

9.      Whether on July 16, 2009, Defendant R. Marshall saw and heard Plaintiff being physically and verbally assaulted by Wildey but refused to intervene.

10.     Whether on July 16, 2009, Defendant R. Marshall had an opportunity to intervene and stop Wildey's assault on Plaintiff.

11.     Whether on July 16, 2009, Defendant R. Marshall just stood by and grinned while Plaintiff was being physically and verbally assaulted by Wildey even though the Plaintiff was pleading and begging for help.

///

///

3

Defendants submit the following facts as disputed:

1.      Whether Defendant Wildey squeezed the handcuffs too tight when he handcuffed Plaintiff and escorted him from the shower to his cell?

2.      Whether Defendant Wildey checked Plaintiff's handcuffs by placing his index finger between the handcuff and Plaintiff's wrist?

3.      Whether Defendant Wildey discovered that the hand cuffs were not too tight because he was able to slide his finger under the handcuffs with ease?

4.      Whether Plaintiff complained a second time that the handcuffs were too tight?

5.      Whether Defendant Wildey rechecked the tightness of the handcuffs by again slipping his index finger in between the handcuffs and Plaintiff's wrist?

6.      Whether Plaintiff "begged" Defendant Wildey to stop squeezing his handcuffs?

7.      Whether Defendant Wildey told Plaintiff and Defendant Marshall that "he could squeeze the handcuffs a lot tighter and reached for Plaintiff's wrist to squeeze the handcuffs tighter?"

8.      Whether Defendants Wildey and Marshall grinned, laughed, or smiled at each other during Defendant Wildey's escort of Plaintiff?

9.      Whether Defendant Marshall observed Defendant's Wildey's escort of Plaintiff?

10.     Whether Plaintiff suffered serious injury or pain as a result of Defendant Wildey allegedly handcuffing him too tight during the escort on July 16, 2009?

**C.      Disputed Evidentiary Issues**

Plaintiff anticipates possible disputes over the admissibility of evidence regarding Plaintiff's California Department of Corrections and Rehabilitation generated documents, such as medical records, 602 appeals, and other such documents Plaintiff intends to use at trial.

Defendants object to Plaintiff's introduction of inmate witness declarations on the grounds that they are hearsay and violate the best evidence rule.  This issue can be resolved by a motion in limine.

**IV.     SPECIAL FACTUAL INFORMATION**

None.

///

4

V.     RELIEF SOUGHT

Plaintiff's complaint seeks compensatory damages in the amount of $75,000.00, and punitive damages in the amount of $75,000.00, nominal damages, attorney fees, costs, and any further relief that the Court deems just.

Defendants pray for judgment in their favor with Plaintiff taking nothing and an award of costs to Defendants.

VI.    POINTS OF LAW

Defendants submit the following points of law:

A.     Action Under 42 U.S.C. § 1983

This § 1983 action is governed by federal law.  To state a claim under § 1983, a plaintiff must allege that a right secured by the Constitution or laws of the United States was violated and that the alleged violation was committed by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991).  A person deprives another of a constitutional right under § 1983 only if he "does an affirmative act, participates in another's affirmative acts," or fails to perform a legally required duty which "causes the deprivation of which" the plaintiff complains. Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).  A plaintiff must demonstrate that the official was the "moving force" behind the constitutional deprivation.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

B.     Excessive Force Under the Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the Constitution.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  See also Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

"The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided the use of force

5

is not of a sort 'repugnant to the conscience of mankind.'" Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). The plaintiff must show that objectively he suffered a sufficiently serious deprivation and that subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

"The objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency.'" Hudson, 503 U.S. at 8 (quoting Estelle, 429 U.S. at 103). The objective prong of the test requires the court to consider whether the alleged wrongdoing was harmful enough to establish a constitutional violation. Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298. The subjective prong of the two-part test is also contextual. Wilson, 501 U.S. at 299. A prison official acts with the requisite "culpable mind" with respect to an excessive use-of-force claim if he acts maliciously and sadistically for the purpose of causing harm. Hudson, 503 U.S. at 6-7. Restraints that are reasonably related to a prison's interest in maintaining security do not, without more, constitute unconstitutional punishment, even if they are discomforting. Bell v. Wolfish, 441 U.S. 520, 540 (1979). Whether restrictions are reasonably related to maintaining security and order is "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Id. at 541, n.23 (citing Pell v. Procunier, 417 U.S., at 827.)

"[T]he absence of serious injury is . . . relevant to the Eighth Amendment inquiry." Hudson, 503 U.S. at 7. De minimis injury suggests a de minimis use of force. White by White v. Pierce County, 797 F.2d 812, 816 (9th Cir. 1986); see also Luong v. City & Cnty. of San Francisco, No. 11-cv-5661-MEJ, 2012 WL 5869561, at *5 (N.D. Cal. Nov. 19, 2012) (vague, uncorroborated testimony of injury attributed to tight handcuffs cannot withstand summary judgment). Moreover, hand numbness associated with tight handcuffs does not rise to the level of cruel and unusual punishment. Ward v. Oromde, No. 09-cv-2542-CMK, 2011 WL 4056035, at *4–5 (E.D. Cal. Sept. 12, 2011) aff'd, 519 F. App'x 470 (9th Cir. 2013) (citing Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2000) (discussing bruises); Wertish v. Krueger, 433 F.3d 1062 (8th Cir. 2006) (discussing scrapes and bruises); Foster v. Metro. Airports Comm'n, 914 F.2d 1076 (8th Cir. 1990) (discussing pain).

6

1    And in general, "a single complaint relating to tight handcuffs is not sufficient to show that the

2    handcuffing constituted excessive force." Smith v. Yarborough, No. 04-cv-4502-DSF, 2008 WL

3    4877464, at *13 (C.D. Cal. Nov. 7, 2008 ) (citing Tibbs v. City of Chicago, 469 F.3d 661, 666 (7th

4    Cir. 2006) (arresting officer entitled to summary judgment when arrestee complained that handcuffs

5    too tight only once, experienced redness on wrists for less than two days, and did not receive medical

6    care).

7    As this Court held in a recent decision, Reviere v. Phillips, even tight handcuffs on for a "few

8    minutes" does not rise to a constitutional violation.  Reviere v. Phillips, No. 1:11-cv-00483-DLB (PC),

9    2014 WL 711002 at *3-4 (E.D. Cal. Feb. 21, 2014.)  In Reviere, the Court concluded that the

10   defendants' use of handcuffs did not rise to the level of excessive force, in violation of the Eighth

11   Amendment.  The Court held that the Eighth Amendment's prohibition of 'cruel and unusual'

12   punishments necessarily excludes from constitutional recognition de minimus uses of physical force,

13   proved the use of force is not of a sort "repugnant to the conscience of mankind."  In Reviere, once

14   plaintiff notified defendants that the handcuffs were too tight, he waited only a few minutes before

15   defendants attempted to remove the handcuffs.  Moreover, there was no evidence plaintiff suffered any

16   physical injury as a result of the handcuffing.  (Id.)

17   **C.    Failure to Intervene Under the Eighth Amendment**

18   Under the Eighth Amendment, prison officials have a duty to take reasonable steps to protect

19   inmates from physical abuse."  Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir. 1982); Farmer v.

20   Brennan, 511 U.S. 825, 833-34 (1994).  "It is not, however, every injury suffered by one prisoner at

21   the hands of another that translates into constitutional liability for prison officials responsible for the

22   victim's safety."  Id. at 834.  To state a claim, the prisoner must allege facts showing that the official

23   was deliberately indifferent to a substantial risk of serious harm to the inmate.  Id. at 828, 834.

24   "Deliberate indifference is a high legal standard," Toguchi v. Chung, 391 F.3d 1051, 1060 (9th

25   Cir. 2004), and requires that the prison official acted with a "sufficiently culpable state of mind."

26   Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  Prison officials may not be held liable

27   "unless the official knows of and disregards an excessive risk to inmate health or safety."  Farmer, 511

28   U.S. at 837.  Thus, the official must not only be aware of facts from which the inference could be

7

drawn that a substantial risk of serious harm exists, but he must also draw the inference.  *Id.*  A prison official cannot be held liable if she was unaware of even an obvious risk, even if the harm ultimately was not averted.  Farmer, 511 U.S. at 844.  Moreover, conduct that does not purport to be punishment must involve more than ordinary lack of due care for the prisoner's interests or safety -- it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the prohibited conduct. Whitley v. Albers, 475 U.S. 312, 319 (1986

For this two-part inquiry, there is an objective and subjective component.  First, the prisoner must establish a "sufficiently serious" risk of harm to his safety.  Farmer, 511 U.S. at 834.  To show a sufficiently serious risk, the prisoner must demonstrate a strong likelihood, rather than a mere possibility, that he will be attacked.  Pinkston v. Madry, 440 F. 3d 879, 889 (7th Cir. 2006).  Second, he must show that the prison official acted with deliberate indifference to his safety – meaning that he was subjectively aware of a high probability of harm, yet consciously chose to disregard the risk. Redman v. County of San Diego, 942 F. 2d 1435, 1442 (9th Cir. 1991).

Finally, "[t]he failure to intervene is a theory of liability that derives meaning from the underlying violation (here, excessive force), not a separate claim."  Taylor v. O'Hanneson,  2014 WL 7359185, at *13 (E.D. Cal. Dec. 24, 2014) report and recommendation adopted, No. 1:11-CV-00538-LJO, 2015 WL 778473 (E.D. Cal. Feb. 24, 2015), citing Lynch v. Barrett, No. 09-cv-00405-JLK-MEH, 2010 WL 3938359, at *4-5 (D. Colo. June 9, 2010); see also, Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation …").  Thus, without an underlying constitutional violation, no claim may be established for failure to intervene.

### E.    Admissibility of Felony Convictions

For the purpose of attacking the character for truthfulness of a witness, evidence that a witness has been convicted of a crime that was punishable by imprisonment in excess of one year shall be admitted subject to Federal Rule of Evidence 403.  Fed. R. Evid. 609(a)(1); see, e.g., Untied States v. Murray, 751 F.2d 1528, 1533 (9th Cir. 1983) (finding that trial court properly determined that probative value of seventeen-year old conviction outweighed its prejudicial effect when needed to resolve significant conflict between defendant and the government's chief witness).

The presumption under Rule 609(a) is that the term "evidence" encompasses the essential facts of the conviction, including the statutory name of each offense, the date of conviction, and the sentence imposed.  United States v. Estrada, 430 F.3d 606, 615-16 (2d Cir. 2005); United States v. Osazuwa, 564 F.3d 1169, 1175 (9th Cir. 2009) (stating that impeachment with prior convictions is generally limited to the crime charged, the date, and the disposition); see also, 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 609.20[2] at 609-57 (2d ed. 2005) ("When a prior conviction is admissible for impeachment, the impeaching party is generally limited to establishing that bare facts of the conviction; usually the name of the offense, the date of the conviction, and the sentence.").

## F.    Qualified Immunity

Government officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The purpose of the rule is to permit officials to undertake their responsibilities without fear that they will be held liable in damages for actions that appear reasonable at the time, but are later held to violate statutory or constitutional rights.  Id. at 819.  "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made" and that it is "often difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation that he faces."  Estate of Ford v. Ramirez Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 205 (2001)).  Thus, "regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful."  Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).

In Saucier, the Supreme Court set forth a two-part inquiry to determine whether the immunity exits.  The initial inquiry, or first prong, is whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show that the officer's conduct violated a constitutional right."  Saucier, 533 U.S. at 201.  If, and only if, a violation can be made out, the next step, or second prong, is to ask whether the "right was clearly established."  Id.  If the right was clearly established at the time of the alleged incident, the court must then determine whether, "under that law, could a

reasonable state official have believed his conduct was lawful." Id. at 202; Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Browning v. Vernon, 44 F.3d 818, 822 (9th Cir. 1995)).  "The linchpin of qualified immunity is the reasonableness of the official's conduct."  Rosenbaum v. Washoe County, 654 F.3d 1001, 1006 (9th Cir. 2011).  Reasonableness is judged against the backdrop of law at the time of the conduct at issue. Brosseau v. Haugen, 543 U.S. 194, 198 (2004); Wilson v. Layne, 526 U.S. 603, 614 (1999).  Thus, the reasonableness inquiry must be undertaken in light of the specific context of the case and not as a general, broad proposition.  Saucier, 533 U.S. at 202; Kennedy v. Ridgefield, 439 F.3d 1055, 1065-66 (9th Cir. 2006).  Qualified immunity allows ample room for mistaken judgments—regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact"—and applies even when wrongful conduct occurs.  Richardson v. McKnight, 521 U.S. 399, 403 (1997); Pearson v. Callahan, 555 U.S. 223, 231 (2009).  The court has the discretion, based on the circumstances of the particular case at hand, to decide whether the two-part inquiry is worthwhile or if a determination can be made by analyzing a single prong of the immunity inquiry.  Pearson, 555 U.S. at 236.

## G.   Punitive Damages

Punitive damages are available in a § 1983 action only when a defendant's conduct is shown to be motivated by evil motive or intent or when it involves reckless or callous indifference to the federally protected rights of others.  Smith v. Wade, 461 U.S. 30, 51 (1983).  It is not enough that a defendant may have acted in an objectively unreasonable manner; his subjective state of mind must be assessed.  Wulf v. City of Wichita, 883 F.2d 842, 867 (10th Cir. 1989).  Where there is no evidence that a defendant acted with evil intent, there is no legal right to punitive damages.  Ward v. City of San Jose, 967 F.2d 280, 286 (9th Cir. 1991).  The plaintiff alleging a § 1983 claim has the burden of proving that punitive damages should be awarded by a preponderance of the evidence.  Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005) (citing Model Civ. Jury Instr. 9th Cir. 7.5 (2004)).

## VII.   STIPULATIONS

Defendants are willing to stipulate to the authenticity of Plaintiff's unaltered records from his central and medical file maintained by CDCR, and any CDCR record generated and maintained in the

regular course of business, which may be used as exhibits at trial.  Defendants reserve the right to object to such exhibits on other grounds.

At this point, Plaintiff is only willing to stipulate that he is confined in the administrative segregation unit at Corcoran State Prison.

## VIII.   AMENDMENTS/DISMISSALS

None.

## IX.   SETTLEMENT NEGOTIATIONS

The parties engaged in settlement negotiations over a year ago, and did not reach an agreement regarding settlement.  No formal mediation or settlement conference has been conducted in this case. Both Plaintiff and Defendants are open to the further settlement discussions.

## X.   AGREED STATEMENT

None.  Defendants do not believe that presentation of an Agreed Statement of Facts is feasible or advisable.

## XI.   SEPARATE TRIAL OF ISSUES

As is this Court's standard practice, the Court will bifurcate the issue of punitive damages.  If the jury finds that Defendant is liable for punitive damages, the Court will conduct a second phase of trial on the amount of punitive damages.

## XII.   IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

Defendants do not request or recommend appointment by the Court of any impartial expert witnesses, nor request or recommend any limitations on the number of expert witnesses who may be called to testify in this case.

Plaintiff seeks an "impartial" wrist expert.

## XIII.   PRE TRIAL FILING DEADLINES

A.   **Motions In Limine and Hearing**

Any party may file a motion in limine, which is a procedural mechanism to limit in advance testimony or evidence in a particular area.  United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009).  In the case of a jury trial, the Court's ruling gives Plaintiff and Defendants' counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the

evidence before the jury.  Id. at 1111-1112.  Although the Federal Rules do not explicitly provide for the filing of motions in limine, the Court has the inherent power to hear and decide such motions as a function of its duty to expeditiously manage trials by eliminating evidence that is clearly inadmissible for any purpose.  Luce v. United States, 469 U.S. 38, 41 n.4 (1984).

This Court further orders the parties to file motions in limine only with respect to important, critical issues.  Motions in limine on abstract evidentiary issues or issues more appropriately addressed by the Court on a case-by-case basis (such as a motion in limine to exclude all irrelevant evidence) will be looked upon with disfavor.  After satisfying the forgoing, if a motion in limine still seeks to address the admissibility of a particular trial exhibit, the exhibit in question must be referenced by the trial exhibit number so that the court can review the actual exhibit for admissibility.  If the exhibit sought to be admitted would not be in the court's possession one week prior to the motion in limine hearing, then the exhibit in question must be included in the motion.   Failure to properly reference or attach an exhibit in the motion will result in the request being denied.

The parties shall not file separate motions in limine for every issue presented to the Court.  Rather, each party may file one consolidated motion in limine which is subdivided into separate sections for each issue setting for the legal authority and analysis.  The responding party shall file one opposition in response addressing each motion in limine issue in a separate section.

As set forth in the Trial Scheduling Order (ECF No. 208), the deadline for service and filing of motions in limine is **December 18, 2015**. The deadline for service and filing of an opposition, if any, is **January 15, 2016**.  A telephonic motions in limine hearing will be held on **January 26, 2016, at 10:30 a.m.** in Courtroom Nine, before the undersigned. Counsel for defendants is directed to arrange for telephone contact with Plaintiff and to contact the Courtroom Deputy, Mamie Hernandez, at (559) 499-5672, prior to the hearing date, to receive instructions regarding the conference call.  The parties are directed to the Court previous order regarding the format and scope of the motion in limine and such motion and opposition shall conform to those requirements.

**B.     Trial Witnesses:**

No later than **January 28, 2016**, each party shall file and serve a final witness list, including the name of each witness and omitting witnesses listed in the joint pretrial statement which the parties

12

no longer intend to call.  **Only witnesses who are listed in this pretrial order may appear on the final witness list**.  **The parties may not call any witness that is not on the final witness list unless (1) it is <u>solely</u> for impeachment or rebuttal purposes, (2) the parties stipulate, (3) additional witnesses are required in light of the Court's ruling on a motion <u>in limine</u>[1], or (4) it is necessary to prevent "manifest injustice."**  Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

During trial, the parties' are obligated to provide the opposing party, by the close of the prior business day, the names of the witnesses the party intends to call on the next trial day.  If evidentiary problems are anticipated, the parties' shall immediately notify the Court that a hearing will be required.

The following is a list of witnesses that the parties expect to call at trial:

1.   <u>Plaintiff Anticipates Calling the Following Witnesses</u>:[2]

a.   Inmate Michael Watkins, CDCR No. V-68691

b.   Inmate Kemon Bead, CDCR No. F-41740

2.   <u>Defendant Anticipates Calling the Following Witnesses</u>:

a.   Plaintiff Benny Ford

b.   Defendant Gary Wildey, Correctional Officer

c.   Defendant Robert Marshall, Correctional Officer

d.   Lou Bonifasio, Licensed Vocational Nurse (LVN)

e.   Dr. Galen Church, Chief Physician and Surgeon

California Healthcare Facility, 7707 Austin Road, Stockton, CA 95215.  Dr. Church is a non-retained expert witness who will provide medical opinion testimony regarding Plaintiff's alleged injuries.

---

[1] Any party seeking to add additional witnesses beyond those named in the final witness list in light of the Court's ruling on a motion <u>in limine</u> must file a notice with the Court within two (2) days after the Court's order on the motion <u>in limine</u>.

[2] As stated in the Court's November 3, 2015, order denying Plaintiff's motion for attendance of incarcerated witnesses, inmates Michael Watkins (V-68691) and Kemon Bead (F-41740) both paroled from custody of the CDCR.  (ECF No. 144, Order at 2.)  Plaintiff was advised that if witnesses Watkins and Bead will not testify voluntarily, and Plaintiff seeks the issuance of subpoenas and service by the United State Marshal, Plaintiff did not follow the proper procedure.  (<u>Id.</u>)

f.      Custodian(s) of Records for Plaintiff's central file and medical records within CDCR.

Defendants reserve the right to call witnesses not listed above for purposes of impeachment or rebuttal.  Defendants further reserve the right to call any witnesses listed by Plaintiff.

**Defendants Gary Wildey and Robert Marshall are ordered to appear in person at trial to potentially be called as witnesses in Plaintiff's case in chief.**

**However, the parties are forewarned that every witness they intend to call must appear on their own witness list.  The mere fact that a witness appears on the opposing party's witness list is not a guarantee that the witness will be called at trial or otherwise be available for questioning by other parties.  Each party must undertake independent efforts to secure the attendance of every witness they intend to call at trial.**

**C.      Exhibits**

As noted below, no later than **January 28, 2016**, the Defendants shall file and serve Defendant's final exhibit list and pre-marked exhibits for both Plaintiff and Defendants.

1.      Pre-Marked Exhibits:

All exhibits must be pre-marked with an exhibit sticker or other legible numbering/lettering by the party who seeks to use it.  If the individual exhibit includes multiple pages and is not easily identified as to each page (i.e., Bates stamp numbering), then the exhibit must be page numbered. This requirement that exhibits be pre-marked applies both to evidence that will be formally admitted into evidence as well as any other exhibits that will be presented in any manner during trial, such as "demonstrative" evidence.  Each individual "original" exhibit that will be submitted to the jury must be stapled/fastened so that the exhibit does not become separated.  Further, exhibits submitted to the jury must be pre-marked on the front page only in the manner described above.  Impeachment or rebuttal evidence need not be pre-marked.

a.      **Joint Exhibits**: Joint exhibits are those exhibits which all parties agree may be admitted into evidence without the need for laying a proper foundation under the Federal Rules of Evidence.  Joint exhibits must be pre-marked with the designation "J-[Number]" (e.g., J-1, J-2). Those exhibits may be introduced at any time during the course of the trial.  However, unless the parties agree otherwise on the record, joint exhibits are not "automatically" admitted into evidence: at

least one of the parties must admit a joint exhibit into evidence.  If an exhibit is not admitted by any party, the exhibit will not be given to the jury despite its "joint" designation as an exhibit.

 **b.** **Plaintiff's Exhibits**:  Plaintiff's exhibits must be pre-marked using **numbers** beginning with 1 (e.g., 1, 2, etc).  The Plaintiff must pre-mark his exhibits before they are provided to the Defendant(s).

 **c.** **Defendant's Exhibits**:  Defendant's exhibits must be pre-marked using **letters** beginning with A (e.g., A, B, C...AA, BB, CC...AAA, BBB, CCC, etc.).

 2. <u>Exchange and Filing of Exhibits List and Exhibits</u>

 No later than **January 8, 2016** the parties shall exchange their proposed exhibits.  The exhibits exchanged shall be pre-marked by each party and correctly exhibited in the format described in Part XIII.C.1, above.

 Defendants are required to submit trial exhibits for both parties in binders.  As noted above, the Defendant(s) shall submit **three complete, legible and identical sets of exhibits in binders** on or about **January 28, 2016**.  Within the binders, the pre-marked exhibits must be separately tabbed and assembled in sequential order.  The three complete binders shall be delivered to Courtroom Clerk Mamie Hernandez for use (1) by the Court; (2) at the witness stand for the witnesses; and (3) by the plaintiff at trial**.**

 3. <u>Exhibits</u>

 The following is a list of documents or other exhibits that the parties expect to offer at trial.  As set forth above, exhibits must be pre-marked.  <u>See</u> discussion, <u>supra</u>, Part XIII.C.1.  No exhibit, other than those listed in this section, may be admitted unless the parties stipulate or upon a showing that this order should be modified to prevent "manifest injustice." Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

 **a.** **Plaintiff's Exhibits**

 i. Inmate/parolee appeal form (CDCR 602) Log No. CCI-0-09-01247

 ii. The confidential attachment to the above 602 appeal form Log No. CCI-0-09-01247

iii.    Inmate/parolee "health care" appeal form (CDCR-602), Log No. CCI-03-informal)

iv.    Kern Radiology Medical Group, Inc.

v.    Medication reconciliation forms, dated November 6, 2009 at 9:07:54 a.m., and August 7, 2009, at 8:57:53 a.m.

vi.    Physician's orders, CDCR-7221 Form for x-rays on July 21, 2009.

vii.    CCI/Prison Encounter Form, dated June 21, 2010.

viii.    Declaration of Plaintiff's witness, Kemon Bead, CDCR No. F-41740, dated July 18, 2009.

ix.    Declaration of Plaintiff's witness, Michael Watkins, CDCR No. V-68691, dated July 18, 2009.

x.    California Code of Regulations, title 15, section 3268 (use of force), 3268 (excessive force).

xi.    California Code of Regulations, title 15, section 3268.1(a)(1) (reporting non-deadly force).

xii.    California Code of Regulations, title 15, section 3268.2(b)(1) (mechanical restraints shall not be used as punishment).

xiii.    California Code of Regulations, title 15, section 3271 (responsibility of employee

xiv.    CDCR "operations manual" section 51030.6 (detailed and specific description of any physical force used by staff during the incident).

xv.    Declaration of Defendant R. Marshall in support of motion for summary judgment, dated August 28, 2014.

xvi.    Deposition taken of Plaintiff by Defendants' counsel, Ms. Preeti Bajwa on February 18, 2014.

xvii.    Corrections to the February 18, 2014, deposition submitted on March 17, 2014.

xviii.    Declaration of Defendant G. Wildey in support of motion for summary judgment.

**b.    Defendants' Exhibits**

i.    Inmate appeal log # CCI-09-01247, dated July 17, 2009

ii.   Inmate appeal log # CCI-09-01247 – Confidential Supplement (redacted version), dated August 21, 2009

iii.   Health Care Services Request Form (CDC 7362), dated January 13, 2009

iv.   Health Care Services Request Form (CDC 7362), dated February 2, 2009

v.   Health Care Services Request Form (CDC 7362), dated February 16, 2009

vi.   Health Care Services Request Form (CDC 7362), dated February 17, 2009

vii.   Health Care Services Request Form (CDC 7362), dated March 23, 2009

viii.   Health Care Services Request Form (CDC 7362), dated May 18, 2009

ix.   Health Care Services Request Form (CDC 7362), dated July 17, 2009

x.   Health Care Services Request Form (CDC 7362), dated September 7, 2009

xi.   Health Care Services Request Form (CDC 7362), dated November 4, 2009

xii.   Health Care Services Request Form (CDC 7362), dated November 12, 2009

xiii.   Health Care Services Request Form (CDC 7362), dated November 17, 2009

xiv.   Physician Orders (CDC 7221), dated February 7, 2009 and March 6, 2009

xv.   Physician Orders (CDC 7221), dated May 11, 2009 and July 21, 2009

xvi.   Interpretation of Outside Films: Right Wrist with Scaphoid view, Kern Radiology Medical Group, Inc., dated July 21, 2009

xvii.   Encounter Form: URI/Rhinitus/Pharyngitis, dated November 6, 2009

xviii.   Interdisciplinary Progress Notes (CDC 7230), dated August 7, 2009

xix.   Interdisciplinary Progress Notes (CDC 7230), dated November 19, 2009 (4 pages)

xx.   Interdisciplinary Progress Notes (CDC 7230), dated November 30, 2009, December 11, 2009, and December 15, 2009

xxi.   Medication Reconciliation – Active and Inactive Medications as of March 5, 2009

xxii.   Medication Reconciliation – Active and Inactive Medications as of April 23, 2009

xxiii.   Medication Reconciliation – Active and Inactive Medications as of August 7, 2009

xxiv.   Medication Reconciliation – Active and Inactive Medications as of November 6, 2009

xxv.   California Code of Regulations title 15, §§ 3268 – 3268.2, 3270 – 3280 (updated through Sept. 30, 2009)

1         xxvi.   CDCR Operations Manual (DOM), §§ 51030.1 – 51030.11 (updated through Jan. 1,

2         2007).

3    **4.      Responses to Discovery Requests**

4         The parties may admit responses to discovery requests[3] into evidence.  The parties shall file

5    and serve a list of all responses to discovery requests intended to be used at trial no later than **January**

6    **28, 2016.**  The list shall identify the responses to discovery requests by title and set number.

7         If a party seeks to admit a physical copy of the discovery responses into evidence at trial, the

8    discovery responses must be pre-marked as an exhibit in the same manner discussed above.  <u>See</u>

9    discussion, <u>supra</u>, Part XIII.C.1.  Alternatively, if the party intends to read relevant portions of the

10   discovery responses into evidence, a copy of the discovery responses must be lodged with the Court

11   no later than **January 28, 2016**.  The Court will address objections to discovery responses as they

12   arise during trial.

13        Even though discovery is closed, all parties are reminded of their continuing obligation to

14   update their prior discovery responses if they obtain new information or is otherwise made aware that

15   a prior discovery response is incomplete or incorrect.  Fed. R. Civ. P. 26(e)(1).

16        **If a party attempts to admit or use for any purpose evidence that (1) was not previously**

17   **disclosed during discovery and (2) should have been disclosed as an initial disclosure under Rule**

18   **26(a) or as a supplemental disclosure under Rule 26(e), the Court will prohibit that party from**

19   **admitting or using for any purpose that evidence at trial, unless the failure was substantially**

20   **justified or was harmless.  <u>See</u> Fed. R. Civ. P. 37(c)(1).**

21        5.   <u>Deposition Testimony</u>

22        Deposition testimony shall be designated by page and line number, with such designation to be

23   **filed and served no later than January 5, 2016.**  Any counter-designation as to the same designation

24   (also set out by page and line number) shall be **filed and served no later than January 19, 2016.**

25   The original certified transcript of any deposition identified in a designated or counter-designation

26

27   _____

28   [3] Responses to discovery requests include responses to depositions by written questions (Fed. R. Civ. P. 31), interrogatories (Fed. R. Civ. P. 33) and requests for admissions (Fed. R. Civ. P. 36).

shall be lodged with the clerk's office **no later than January 19, 2016**, if not previously lodged with the Court.

If any party intends to admit relevant portions of deposition testimony into evidence, the relevant deposition testimony must be pre-marked as an exhibit in the same manner discussed above. See discussion, supra, Part XIII.C.1.  However, any party may request that deposition testimony offered for any purpose other than impeachment be presented in nontranscript form, if available.  See Fed. R. Civ. P. 32(c).

The Court will address objections to deposition testimony as they arise during trial.

6.   Duty of the Parties' Counsel

The Court respects the jury's time and expects issues that must be presented outside the jury's presence to be raised such that the jury's service is not unnecessarily protracted.  To the extent possible, the parties shall raise issues that must be presented to the Court outside of the jury's presence (1) in the morning before the jury sits, (2) during breaks, (3) in the afternoon after the jury is excused or (4) during any other appropriate time that does not inconvenience the jury.  For example, if evidentiary problems can be anticipated, the parties should raise the issue with the Court before the jury sits so that there is no delay associated with specially excusing the jury.  Issues raised for the first time while the jury is sitting when the issue could have been raised earlier will be looked upon with disfavor and counsel may be sanctioned for any fees, costs or other expenses caused by their failure to raise the issue at a more convenient time.

7.   Post-Trial Exhibit Retention

Pursuant to Local Rule 138(f), the Court will order that custody of all exhibits be returned to the defendants counsel after completion of the trial.  The defendants counsel shall retrieve the original exhibits from the courtroom deputy following the verdict in the case.  The defendants' counsel shall retain possession of and keep safe all exhibits until final judgment and all appeals are exhausted or the time for filing an appeal has passed.

///

///

///

**D.  Trial Briefs**

Trial briefs are not required in this case.  However, if the parties chose the file a trial brief, it shall be filed and served no later than **February 2, 2016**.[4]  The form and content of the trial brief must comply with Local Rule 285.  Special attention should be given in the trial brief to address reasonably anticipated disputes concerning the substantive law, jury instructions and/or admissibility of evidence. Local Rule 285(a)(3).  The parties need not include in the trial brief any issue that is adequately addressed in a motion in limine or in an opposition brief to a motion in limine.

**E.  Jury Instructions**

The parties shall filed proposed jury instructions as provided in Local Rule 163 on or before **January 25, 2016.**  The parties are only required to file proposed jury instructions relating to the substantive law underlying this action. All proposed jury instructions shall (1) indicate the party submitting the instruction (i.e., joint/agreed-on, Plaintiff's or Defendants'), (2) be numbered sequentially, (3) include a brief title for the instruction describing the subject matter, (4) include the text of the instruction, and (5) cite the legal authority supporting the instruction. If the proposed jury instruction is based on the Ninth Circuit Model Jury Instructions, CACI, BAJI or other source of jury instructions, the proposed jury instruction shall also include a citation to that specific instruction. All proposed jury instructions shall be e-mailed in Word® format to saborders@caed.uscourts.gov no later than **January 25, 2016**.  Jury Instructions will not be given or used unless they are so e-mailed to the Court.

The Court will not accept a mere list of numbers associated with form instructions from the Ninth Circuit Model Jury Instructions, CACI, BAJI or other source of jury instructions. The proposed jury instructions must be in the form and sequence which the parties desire to be given to the jury. Any blank fields in the form instructions must be filled-in before they are submitted to the Court. Irrelevant or unnecessary portions of form instructions must be omitted.

Ninth Circuit Model Jury Instructions shall be used where the subject of the instruction is covered by a model instruction. Otherwise CACI or BAJI instructions shall be used where the subject

---

[4] The deadline set for trial briefs set in this order shall supersede the deadline set in Local Rule 285(a).

of the instruction is covered by CACI or BAJI. All instructions shall be short, concise, understandable, and consist of neutral and accurate statements of the law. Argumentative or formula instructions will not be considered.

If any party proposes a jury instruction that departs from the language used in the Ninth Circuit Model Jury Instructions, CACI, BAJI or other source of jury instructions, that party shall, by italics or underlining, highlight the differences in language and must cite the legal authority supporting the modification.

No later than **February 1, 2016**, the parties shall file and serve written objections to any disputed jury instructions proposed by another party. All objections shall be in writing and (1) shall set forth the proposed instruction objected to in its entirety, (2) shall specifically set forth the objectionable matter in the proposed instruction, and (3) shall include a citation to legal authority to explain the grounds for the objection and why the instruction is improper. A concise argument concerning the instruction may be included. Where applicable, the objecting party shall submit an alternative proposed instruction covering the subject or issue of law.

**F.  Proposed Verdict Form**

The Court will prepare the verdict form, which the parties will have the opportunity to review on the morning of trial. If the parties wish to submit a proposed verdict form, they must do so on or before **January 25, 2016**.  Defense counsel's proposed verdict form shall also be e-mailed as a Word® attachment to saborders@caed.uscourts.gov no later than **January 25, 2016.**

**G.  Proposed Jury <u>Voir</u> <u>Dire</u>**

Proposed <u>voir</u> <u>dire</u> questions, if any, shall be filed on or before **January 25, 2016**, pursuant to Local Rule 162.1(a).  The parties each are limited to fifteen (15) minutes of jury <u>voir</u> <u>dire</u>, unless this Court determines more time is warranted.

**H.  Statement of the Case**

The parties may serve and file a non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **January 25, 2016**.  The Court will consider the parties' statements but will draft its own statement. The parties will be provided with the opportunity to review the Court's prepared statement on the morning of trial.

## XIV.   ASSESSMENT OF JURY COSTS FOR FAILURE TO TIMELY NOTIFY COURT OF SETTLEMENT

The parties must immediately notify the Court of any agreement reached by the parties which resolves this litigation in whole or in part.  Local Rule 160(a).  The parties must advise the Court of settlement immediately, but must do so no later than 4:30 p.m. (Pacific Time) on **February 2, 2016.** If, for any reason attributable to counsel or parties, including settlement, the Court is unable to commence a jury trial as scheduled when a panel of prospective jurors has reported for voir dire, the Court may assess against counsel or parties responsible all or part of the cost of the panel.  Local Rule 272(b).  Jury costs will include attendance fees, per diem, mileage, and parking.  If the parties request a continuance after the jury has been called, the Court may assess jury costs as a condition for the continuance.

## XV.   COMPLIANCE WITH THIS ORDER

Strict compliance with this order and its requirements is mandatory.  This Court will strictly enforce the requirements of this pretrial order, especially those pertaining to jury instructions and verdict forms.  Failure to comply with all provisions of this order may be grounds for the imposition of sanctions, including possible dismissal of this action or entry of default, on any all counsel as well as on any party who causes non-compliance with this order.  This order shall be modified "only to prevent manifest injustice."  Fed. R. Civ. P. 16(e).

Moreover, this order supersedes the parties' pretrial statement and controls the conduct of further proceedings irrespective of any purported rights the parties claim to reserve in their pretrial statement.

## XVI.   OBJECTIONS TO PRETRIAL ORDER

Any party may file and serve written objections to any of the provisions of this order on or before **January 5, 2016**.  Such objections shall specify the requested modifications, corrections, additions or deletions.

## XVII.  USE OF ELECTRONIC EQUIPMENT IN COURTROOM

Any party wishing to receive an overview or tutorial of the Court's electronic equipment must contact the Courtroom Deputy Clerk Mamie Hernandez at (559) 499-5672 or

mhernandez@caed.uscourts.gov at least two (2) weeks before the start of trial in order to schedule a tutorial session at a time convenient to the Court's Information Technology staff.  The parties will not be provided any training on the day of or during the course of the trial.

The electronic equipment and resources available for this trial may differ from the equipment and resources available in other courtrooms and may even differ from the equipment and resources available in this courtroom at another time.  It is the responsibility of the parties to familiarize themselves with the equipment and resources available for use in this trial prior to the commencement of trial.  If any party is unfamiliar with the equipment and resources available for use in this trial, that party may be ordered to proceed without the aid of such equipment and resources and/or may be sanctioned for any fees, costs or expenses associated with any delay.

Depending upon Court available equipment at the time of trial, the Plaintiff may be provided with an electronic overheard projector at his trial table for purposes of showing exhibited and admitted exhibits at trial.  Accordingly, Plaintiff need not request that he allowed to use electronic equipment as Plaintiff may be provided with electronic equipment if available.

## XVIII. OTHER INFORMATION

Additional information describing this Court's expectations regarding attorney conduct and decorum during all proceedings before United States Magistrate Judge Stanley A. Boone can be found at the United States District Court for the Eastern District of California's website (http://www.caed.uscourts.gov) under Judges; United States Magistrate Judge Stanley A. Boone (SAB).  In the area entitled "Case Management Procedures," there are links to "Standard Information" and "Trial Conduct and Decorum."  All parties and counsel shall comply with the guidelines set forth therein.  However, in the event that there is a conflict between this order and the information on the Court's website, this order shall supersede the information on the Court's website.  Furthermore,

///
///
///
///
///

additional information can be found on the Court's link including the Court's "Jury Selection Procedures" in civil juries.

IT IS SO ORDERED.

Dated:   **December 18, 2015**

UNITED STATES MAGISTRATE JUDGE

24